**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick, Arizona Bar #004738
J. James Christian, Arizona Bar #023614
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Tel: (602) 255-6000
Fax: (602) 255-0103
rgh@tblaw.com; jjc@tblaw.com

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Christopher S. Jones
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: (561) 394-3399
Fax: (561) 394-3082

*Counsel for Lead Plaintiff and Proposed
Counsel for the Class*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID SHAPIRO, Individually and On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MATRIXX INITIATIVES, INC., WILLIAM J. HEMELT, SAMUEL C. COWLEY, TIMOTHY L. CLAROT, and CARL J. JOHNSON,<br><br>Defendants. | No. CV-09-1479-PHX-ROS<br><br>**MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 2

    A.  MATRIXX'S BUSINESS ...................................................................... 2

    B.  MATRIXX CONCEALED ADVERSE EVENT REPORTS.................................. 3

    C.  THE SERIOUSNESS OF ANOSMIA ........................................................ 4

III. ARGUMENT ............................................................................................... 5

    A.  THE REQUIREMENTS OF RULE 23 ...................................................... 5

    B.  PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(a) ......................... 6

        1.  Numerosity Is Established......................................................... 7

        2.  Commonality Is Established ...................................................... 7

        3.  Typicality Is Established ........................................................... 9

        4.  Adequacy Is Established ......................................................... 10

    C.  LEAD PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(b) .............. 11

        1.  Common Questions Of Law And Fact Predominate ...................... 11

        2.  Superiority Is Established ........................................................ 15

    D.  PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL .............. 16

IV. CONCLUSION ........................................................................................... 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 2TheMar. com, Inc. Sec. Litig.*,
  114 F. Supp. 2d 955 (C.D. Cal. 2000)...................................................................... 14

*In re Alco Int'l. Grp., Inc.*, *Sec. Litig.*,
  158 F.R.D. 152 (S.D. Cal. 1994) ............................................................................ 11

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................... 12

*In re Arakis Energy Corp. Sec. Litig.*,
  No. 95-CV-3431 (ARR), 1999 WL 1021819
  (E.D.N.Y. Apr. 30, 1999) ....................................................................................... 12

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1998) ......................................................................................... 12, 13

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999) ................................................................................ 13

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975),
  *cert. denied*, 429 U.S. 816 (1976) ................................................................. passim

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989)................................................................. 13, 14, 15

*Conn. Ret. Plans & Trust Funds v. Amgen*,
  No. CV 07-2536 PSG (PLAx) 2009 WL 2633743
  (C.D. Cal. Aug. 9, 2009) .......................................................................................... 9

*Conn. Ret. Plans and Trust Funds v. Amgen*,
  660 F.3d 1170 (9th Cir. 2011) ................................................................................ 13

*In re Convergent Tech. Sec. Litig.*,
  948 F.2d 507 (9th Cir. 1991) .................................................................................. 13

*In re Cooper Cos. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ................................................................... passim

ii

*In re DJ Orthopedics, Inc. Sec. Litig.*,
    No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS 21534
    (S.D. Cal. Nov. 17, 2003) ........................................................................ 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................................ 6

*In re Emulex Corp. Sec. Litig*.,
    210 F.R.D. 717 (C.D. Cal. 2002) ........................................................... 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ...................................................................... 2, 12

*Fogarazzo v. Lehman Bros., Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) .............................................................. 8

*Freedman v. Louisiana-Pacific Corp*.,
    922 F. Supp. 377 (D. Or. 1996) ............................................................ 12

*General Telephone Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982) ................................................................................ 9

*Hanlon v. Chrysler Corp*.,
    150 F.3d 1011 (9th Cir. 1998) .......................................................... 7, 11

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) .................................................................. 7

*In re Juniper Networks, Inc. Sec. Litig*.,
    264 F.R.D. 584 (N.D. Cal. 2009) ........................................................... 16

*Katz v. Image Innovations Holdings, Inc.*,
    No. 06 Civ 3707 (JGK), 2010 WL 2926196
    (S.D.N.Y. July 22, 2010) ......................................................................... 6

*Levine v. SkyMall, Inc.*,
    No. CIV. 99–166–PHX–ROS, 2002 WL 31056919
    (D. Ariz. May 24, 2001) ................................................... 6, 13, 14, 15

*In re Memorex Sec. Cases*,
    61 F.R.D. 88 (N.D. Cal. 1973) ............................................................... 11

*In re Nature's Sunshine Product's Inc. Sec. Litig.*,
    251 F.R.D. 656 (D. Utah 2008) ............................................................. 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000)................................................ 12

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009),
    *cert. granted*, 130 S. Ct. 3411 (2010)...................................... 3

*In re THQ, Inc. Sec. Litig.*,
    No. CV 00-1783 AHM
    2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ........................... 6

*Wagner v. Barrick Gold Corp.*,
    251 F.R.D. 112 (S.D.N.Y. 2008)............................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................ 8

**STATUTES**

21 U.S.C. § 379aa(a)(3)(A) ............................................................ 3

**RULES**

Federal Rules of Civil Procedure
    Rule 23............................................................................... passim
    Rule 23(a) .......................................................................... passim
    Rule 23(a)(1) .............................................................................. 7
    Rule 23(a)(2) ......................................................................... 7, 9
    Rule 23(a)(3) .............................................................................. 9
    Rule 23(a)(4) ..................................................................... 10, 11
    Rule 23(a)(b)(3)................................................................... 1, 17
    Rule 23(b)........................................................................ 1, 5, 11
    Rule 23(b)(3) ........................................................... 5, 6, 15, 16
    Rule 23(b)(3)(A)-(D)................................................................ 16
    Rule 23(g)(1)(A)(i)-(iv)............................................................ 17
    Rule 23(g).................................................................................. 17
    Rule 23(g)(1)............................................................................. 16
    Rule 23(g)(1)(B)........................................................................ 17

**SECONDARY AUTHORITY**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice & Procedure § 1778 (2d ed. 1986) .............. 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

## MOTION

Lead Plaintiff Axel Alegre de La Soujeole ("Lead Plaintiff" or "Plaintiff") respectfully moves, pursuant to Fed. R. Civ. P. 23(a), (b)(3), for an order (i) certifying this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class of Matrixx Initiatives, Inc. ("Matrixx" or the "Company") investors, as defined below; (ii) appointing Lead Plaintiff as Class Representative; and (iii) appointing Saxena White P.A. ("Saxena White") and Faruqi & Faruqi LLP ("Faruqi") as Class Counsel.  By this motion, Lead Plaintiff seeks to certify the following proposed class (the "Class"):

> All persons and entities who purchased or otherwise acquired the publicly traded common stock of Matrixx Initiatives, Inc. from December 22, 2007 through June 15, 2009, inclusive, and who were damaged thereby. Excluded from the Class are Defendants and their respective officers, affiliates and directors, members of their immediate families and their legal representative, heirs, successors or assigns of any such excluded party and any entity in which Defendants have or had a controlling interest.

Lead Plaintiff's supporting Memorandum of Points and Authorities follows.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case is ideally suited for class treatment under Fed. R. Civ. P. 23 ("Rule 23"). As demonstrated below, Plaintiff's claims satisfy each of the four requirements of Rule 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.    Furthermore, this action also satisfies the requirements for class certification under Rule 23(b).  As for the reliance element of Lead Plaintiff's Section 10(b) claim, Lead Plaintiff has established that a presumption of reliance applies pursuant to the fraud-on-the market theory of reliance.[1]  Pursuant to the fraud-on-the-market

---

[1]   In support of this motion, Plaintiff submits the expert report of Zachary Nye, Ph.D. ("Nye Decl."), which supports the point that Matrixx common stock traded in an efficient market from December 22, 2007 through June 15, 2009, inclusive ("Class Period").  The Nye Decl. is attached hereto as Exhibit A.

doctrine, a presumption of reliance applies to Lead Plaintiff's Section 10(b) claims as well as those of the Class.[2]   Accordingly, this action meets Rule 23's requirements, and Lead Plaintiff's motion for class certification should be granted.

## II.   STATEMENT OF FACTS[3]

### A.   MATRIXX'S BUSINESS

Throughout the Class Period, Matrixx marketed and sold Zicam Cold Remedy Products,[4] not to cure the common cold, but solely to "reduce" the "duration of the common cold" and the "severity of cold symptoms," including "sore throat, stuffy nose, sneezing, coughing and congestion."  (¶¶2, 3, 13, 28).  Zicam Cold Remedy Products were subject to FDA regulations with regard to the reporting of serious adverse events, as well as manufacturing processes and procedures, ingredients in the products, labeling and claims made.  (¶¶3, 29, 30-34).  The sale of Zicam Cold Remedy Products was absolutely vital to Matrixx's financial well-being.  Notably, Zicam Cold Remedy Nasal Gel and Cold Remedy Swabs accounted for 38%, or $42.5 million, of the Company's net sales in fiscal year 2009, and 33%, or $33.96 million, of the Company's net sales in fiscal year 2008.  (¶26).  Moreover, the Company had to record a $9.2 million reserve and take impairment charges of $23.9 million when the Company was forced to remove Zicam Cold Remedy Products from store shelves.  (*Id.*).

---

[2]   *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011), (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1998)) (according to the doctrine, "'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'").

[3]   All references herein to "¶__" are to paragraphs in Plaintiff's Amended Class Action Complaint (the "Complaint").  Emphasis is added and internal citations are omitted unless otherwise indicated.

[4]   "Zicam Cold Remedy Products" includes Zicam Cold Remedy nasal gel, Zicam Cold Remedy gel swabs, and Zicam Cold Remedy children's swabs.  (¶2).

### B.   MATRIXX CONCEALED ADVERSE EVENT REPORTS

Beginning in 2004, certain adverse reports began to emerge regarding Zicam, followed by the filing of certain product liability and personal injury actions. (¶¶35, 37-38).[5]  Defendants mounted a publicity campaign to respond to these reports in the press, personally to consumers, and most notably to investors in their public filings with the Securities and Exchange Commission ("SEC"). (¶¶36, 38).  Indeed, at one point, in conjunction with a recall for manufacturing irregularities, Defendants went so far as to boast to consumers and investors alike that there had been "no reports of injury or illness involving the affected products." (¶71).[6]

On December 22, 2006, Congress passed the Dietary Supplement and Nonprescription Drug Consumer Protection Act (the "Act"), which took effect on December 22, 2007.  The Act requires manufacturers of nonprescription drugs to submit to the FDA any report received of a serious adverse event associated with such drug within 15 business days after the receipt. (¶30).  The Act defines a "serious adverse event" to include, among other things, "an adverse event that (A) results in . . . (iv) a persistent or significant disability or incapacity." (21 U.S.C. § 379aa(a)(3)(A); ¶31).  Unbeknownst to either the FDA or investors, Matrixx had received over 800 reports of

---

[5]  Following these initial adverse reports, a securities class action asserting a class period from October 22, 2003, to February 6, 2004, was filed against Matrixx claiming that the failure to disclose certain early reports of anosmia rendered projections of future growth false and misleading.  *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1170 (9th Cir. 2009), *cert. granted*, 130 S. Ct. 3411 (2010).  In this prior class action, the Ninth Circuit held that "[w]ithholding reports of adverse effects of and lawsuits concerning the product responsible for the company's remarkable sales increase is 'an extreme departure from the standards of ordinary care' and 'presents a danger of misleading buyers or sellers.'"  *Id.* at 1183 (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999)).

[6]  Matrixx also mounted a vigorous defense to the pending product liability and personal injury actions.  While Defendants disclosed the pendency of these actions in their SEC filings, each time their "disclosures" were coupled with vehement denials that these products caused anosmia, instead affirming that "such claims are scientifically unfounded and misleading." (¶¶38, 46).

anosmia directly from consumers with regards to Zicam Cold Remedy Products.  (¶¶4, 55, 84-86).

Following the first inspection by the FDA during the Class Period, the inspector issued a Form 483 on May 28, 2009, which concluded that "*[s]erious adverse event(s) for a non-prescription drug used in the United States ha[ve] not been reported to the Secretary.*"  (¶48).  Following this inspection, and based upon the 130 adverse event reports ("AERs") submitted directly to the FDA *by consumers* (not by Matrixx), the FDA issued a Warning Letter stating that Zicam Cold Remedy Products "may pose a serious risk to consumers," and that the products could no longer be sold without a new drug application supported by scientific evidence demonstrating that the products were both safe and effective.  (¶¶52, 53).  Further, the Warning Letter specifically asked Matrixx to submit the *more than 800 AERs* the Company had received directly from consumers, but which had *never* previously been disclosed either to the FDA or investors.  (¶55).  Upon disclosure of the FDA Warning Letter and the existence of over 800 serious adverse incidents in the Company's possession that went unreported to the FDA, it is hardly surprising that the Company's stock price plummeted on June 16, 2009 from a $19.24 closing price the previous day to close at $5.78—a massive one-day drop of approximately 70%.  (¶84).

## C.   THE SERIOUSNESS OF ANOSMIA

At various times throughout the course of this litigation, Defendants have argued that they were not under an obligation to submit reports of anosmia to the FDA because the Company did not believe that anosmia was a serious adverse event.  However, the FDA has indeed determined that anosmia is a serious problem.  (¶¶4, 52, 53, 56).  For instance, FDA officials stated that Zicam Cold Remedy Products caused "serious consequences" (¶4) and "serious problems" (¶56).  Moreover, following the first inspection by the FDA during the Class Period, the inspector issued a Form 483 on May 28, 2009, which concluded that "*[s]erious adverse event(s) for a non-prescription drug*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

*used in the United States ha[ve] not been reported to the Secretary.*"  (¶48).  Following this inspection, the FDA issued a Warning Letter stating that Zicam Cold Remedy Products "may pose a serious risk to consumers," and informing the Company that its products could no longer be sold without a new drug application supported by scientific evidence demonstrating that the products were both safe and effective.  (¶¶52, 53).

Additionally, Dr. Charles E. Lee from the FDA's Center for Drug Evaluation and Research and Office of Compliance, in a March 11, 2009 Memorandum stated that the "[l]oss of sense of smell may have serious consequences." (¶4).  Then, in an FDA media briefing on June 16, 2009, Dr. Lee unequivocally observed "the loss of the sense of smell, known as anosmia, is serious," and went on to note that the "loss of the sense of smell is potentially life threatening and may be permanent."  (Dkt. # 32-5 at 58-59 (Ex. 37 at 3-4)).

Accordingly, the only plausible inference that can be drawn from the facts is that the FDA determined that anosmia is in fact a serious problem.  (¶¶4, 52, 53, 56).

## III.   ARGUMENT

### A.   THE REQUIREMENTS OF RULE 23

Rule 23 governs class certification.  In order for a class to be certified, the party seeking class certification must first show that the class satisfies the four requirements of numerosity, commonality, typicality and adequacy.  Fed. R. Civ. P. 23(a).  Once a court determines that the Rule 23(a) requirements have been met, it may grant class certification if it finds that the plaintiff satisfies one of the three subsections of Rule 23(b).  Here, Plaintiff seeks class certification pursuant to Rule 23(b)(3), which requires that "the court finds the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).[7]

In reviewing the Rule 23 criteria, the Court should not resolve factual issues that are not relevant to a particular Rule 23 requirement.[8]  Indeed, "neither the possibility that a plaintiff will be unable to prove his allegations, *nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong*, is a basis for declining to certify a class which apparently satisfies the Rule."  *Levine*, 2002 WL 31056919, at *2 (emphasis in original) (quoting *Blackie*, 524 F.2d at 901).   As demonstrated below, Plaintiff meets Rule 23(a)'s four requirements for class certification.

## B.   PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(A)

Here, class certification is appropriate under Rule 23.  The Complaint details false and misleading statements that damaged thousands of similarly situated individuals. Ninth Circuit courts have repeatedly endorsed the use of class action procedures to resolve claims under the federal securities laws.  As one court has stated, "the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."  *In re THQ, Inc. Sec. Litig.*, No. CV 00-1783 AHM, 2002 WL 1832145, at *2 (C.D. Cal. Mar.

---

[7]   As an initial matter, "[w]hen evaluating a motion for class certification, the Court assumes that the allegations contained in the Amended Complaint are true."  *Levine v. SkyMall, Inc.*, No. CIV. 99–166–PHX–ROS, 2002 WL 31056919, at *2 (D. Ariz. 2002) (J. Silver) (citing *Brink v. First Credit Res.*, 185 F.R.D. 567, 569 (D. Ariz. 1999)); *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975) ("The court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations."), *cert. denied*, 429 U.S. 816 (1976).   Indeed, a party seeking class certification "need only provide sufficient evidence which would allow the Court to make an 'informed judgment' on Rule 23's requirements."  *Levine*, 2002 WL 31056919, at *2.

[8]   *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or prevail on the merits, but rather whether the requirements of Rule 23 are met."); *see also Katz v. Image Innovations Holdings, Inc.,* No. 06 Civ. 3707 (JGK), 2010 WL 2926196, at *2 (S.D.N.Y. July 22, 2010) ("A motion for class certification should not . . . become a mini-trial on the merits.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

22, 2002); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (quoting *Blackie*, 524 F.2d at 903).  Courts recognize that any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the members of the class.  *Blackie*, 524 F.2d at 901.

### 1.   Numerosity Is Established

Rule 23 permits class certification if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean impossible; only that it would be difficult or inconvenient to join all members of the class.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "No exact numerical cut-off is required, rather, the specific facts of each case must be considered."  *Cooper*, 254 F.R.D. at 633.  In securities cases, numerosity is presumed when millions of shares are outstanding and traded during the proposed class period.  *Id*.

As of June 8, 2009, Matrixx had over 9 million shares of common stock outstanding[9] and, throughout the Class Period, the Company's stock was actively traded on the NASDAQ.  ¶92.  Although Lead Plaintiff has not at this time ascertained the precise number of potential Class members, he believes that there are thousands of potential Class members dispersed throughout the United States. ¶92.  Accordingly, the numerosity of the Class cannot be disputed.

### 2.   Commonality Is Established

A proposed class meets the commonality requirement if "there are questions of law or fact common to the class."  *Cooper*, 254 F.R.D. at 633; Fed. R. Civ. P. 23(a)(2). Not all questions of fact and law need be common to satisfy Rule 23(a)(2).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).   This factor is "construed

---

[9]  During the Class Period, Matrixx had between 9.4 million and 10.2 million shares of common stock outstanding, with an average weekly trading volume of 353,887 shares. *See* Nye Decl., at ¶15.

permissively, and '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'"  *Id*. at 1019.  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Courts have consistently recognized that securities fraud cases in which a plaintiff alleges misrepresentations and omissions regularly present common issues of law and fact.[10]  Here, the Complaint details a course of conduct whereby Defendants made material misrepresentations and omissions to the public, which is the hallmark of securities actions brought and certified as class actions under Rule 23.  As the Ninth Circuit has stated:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie*, 524 F.2d at 902.  Common questions of law and fact at issue here include:

> (i)   whether documents, press releases, and other statements disseminated to the investing public and Matrixx's shareholders during the Class Period misrepresented material facts about the business, finances, financial conditions, and future prospects of the Company;
>
> (ii)  whether Defendants made statements to the investing public during the Class Period that misrepresented material facts about the business, operations and management of the Company;

---

[10]  *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (*citing Blackie*, 524 F.2d at 902 (9th Cir. 1975)) ("In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.").

(iii)    whether the market price of the Company's common stock during the Class Period was artificially inflated due to Defendants' material misrepresentations and omissions, and failure to correct those material misrepresentations and omissions;

(iv)    whether Defendants participated in and pursued a common course of conduct;

(v)    whether Defendants' acts violated the federal securities laws; and

(vi)    whether the Class has sustained damages, and the amount and proper measure of those damages.

As explained above, the crux of the Complaint involves the issuance of materially false and misleading statements concerning the Company's Zicam Cold Remedy Products and Matrixx's compliance with FDA regulations, including adverse material information that the Company failed to disclose. Plaintiff alleges that Defendants' public statements falsely represented Matrixx's business and operations, thereby deceiving investors regarding the Company's true condition and the value of Matrixx's common stock throughout the Class Period. Under these circumstances, Rule 23(a)(2)'s commonality requirement is plainly satisfied here. *See, e.g.*, *Blackie*, 524 F.2d at 902-05.

### 3.    **Typicality Is Established**

The typicality requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Cooper*, 254 F.R.D. at 635; Fed. R. Civ. P. 23(a)(3). The Supreme Court has observed that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Conn. Ret. Plans & Trust Funds v. Amgen*, No. CV 07-2536 PSG (PLAx), 2009 WL 2633743, at *5 (C.D. Cal. Aug. 9, 2009) *aff'd* 660 F.3d 1170 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). In determining this requirement, "courts look to whether other members have the same or similar injury, whether the action is based on conduct which is not

9

unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Id*.

Lead Plaintiff satisfies the typicality requirement here as his claims against Defendants are typical of the claims of other Class members because their injuries derive from a unitary course of conduct—Defendants' material misrepresentations and omissions regarding the Company's Zicam Cold Remedy Products and Matrixx's compliance with FDA regulations.  Moreover, the damages sustained by Plaintiff and other members of the Class arise from the same course of misconduct.  Plaintiff, like other Class members, purchased Matrixx's common stock and thereby suffered damages as a consequence of Defendants' actions and inactions.  Thus Lead Plaintiff easily satisfies the typicality requirement.

### 4.    **Adequacy Is Established**

Rule 23(a) permits class certification when "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4); *see Cooper*, 254 F.R.D. at 636.  "The adequacy requirement depends on: (1) whether the class representatives and their counsel have any conflicts of interest with other class members; and (2) whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class."  *Cooper*, 254 F.R.D. at 636 (citing *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003)).  Lead Plaintiff satisfies these requirements here.

First, Plaintiff has engaged qualified, experienced and capable attorneys who have an excellent track record in prosecuting complex securities class actions such as this litigation.  *See* Co-Lead Counsel and Liaison Counsel Firm Resumes, Dkt. ## 24-5, 24-6, 24-7, 24-8.  Second, Lead Plaintiff is well-suited to represent the Class as he has no interests antagonistic to other Class members and, like other Class members, he has been injured by Defendants' material misrepresentations and omissions during the Class Period and has suffered losses therefrom.  There are no unique defenses that apply to Plaintiff, he has taken steps to secure competent counsel for the Class, and he has

remained informed about the status of the litigation at all times.  Indeed, Lead Plaintiff has been actively involved in this litigation and, importantly, is willing to serve as a representative party on behalf of the Class.  *See* Declaration of Lead Plaintiff Axel Alegre de La Soujeole.[11]  Plaintiff is thus willing and able to prosecute this action on behalf of the Class.  Accordingly, Lead Plaintiff "will fairly and adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4).

## C.   LEAD PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(B)

### 1.   Common Questions Of Law And Fact Predominate

Where a complaint alleges a "common course of conduct," of misrepresentations, omissions and other wrongdoings that affect all members of the class in the same manner, common questions predominate.  *Blackie*, 524 F.2d at 905-08; *In re Alco Int'l. Grp., Inc.*, *Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal. 1994).   In determining whether common questions predominate over individual questions, a court's inquiry is directed toward whether the issue of liability is common to the members of the class.  *Blackie*, 524 F.2d at 902; *In re Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal. 1973).[12]

As discussed above, there are a host of common questions of law and fact in this case.   These questions clearly predominate over individual questions because Defendants' alleged conduct affected all class members in the same manner and artificially inflated the price of Matrixx stock.  "The predominant questions of law or fact at issue in this case are the alleged misrepresentations Defendants made during the Class Period and are common to the class."  *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717,

---

[11] A copy of Lead Plaintiff's declaration is attached hereto as Exhibit B.

[12] *See also Hanlon*, 150 F.3d at 1022 ("'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'") (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

721 (C.D. Cal. 2002); *see also Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 399-400 (D. Or. 1996).

Indeed, courts around the country have frequently recognized that common questions of law or fact will predominate in securities fraud actions that allege materially false representations or omissions were made to large groups of investors.[13]  Even the Supreme Court has observed that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud. . . ."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Here, the Complaint alleges that all Defendants violated Section 10(b) and Rule 10b-5, and that the Individual Defendants violated Section 20(a).  ¶¶110-124.  Once these common questions are resolved, all that will remain is the purely mechanical act of computing the amount of damages suffered by each Class member.  By contrast, there are no significant (let alone predominant) individual issues, even with respect to issues such as reliance, as discussed below.

In opposing class certification in securities fraud cases, defendants invariably argue that the need to show reliance means that individual issues will predominate and, therefore, class certification should be denied.  Here, however, reliance can be presumed under the "fraud-on-the-market doctrine" set forth in *Basic v. Levinson*, 485 U.S. 224.[14]  Notably, the fraud-on-the-market presumption *eliminates* the need for proof of reliance on an individual basis.  The fraud on the market presumption developed as a practical

---

[13] *See, e.g., In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 377 (S.D.N.Y. 2000) ("[A]ll class members' claims arise from a common nucleus of facts:  Defendants' alleged concealment and/or misrepresentations of material facts affecting the market price of the stock. . . ."); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 30, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.").

[14] *See also Halliburton*, 131 S. Ct. at 2185 (noting that a plaintiff is entitled to presumption of reliance upon a showing that "the alleged misrepresentations were publicly known . . . , that the stock traded in an efficient market, and that the relevant transactions took place 'between the time the misrepresentations were made and the time the truth was revealed").

response to the difficulties of proving direct reliance in the context of modern securities markets.  The presumption is based on the hypothesis that:

> [I]n an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements . . . . The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic*, 485 U.S. at 224-42.[15]

As the Ninth Circuit recently held, a plaintiff seeking to invoke the fraud-on-the-market presumption of reliance need merely show that (1) the securities traded in an efficient market; and (2) the defendants' misrepresentations were public.  *Conn. Ret. Plans and Trust Funds v. Amgen, Inc.*, 660 F.3d 1170, 1172 (9th Cir. 2011) ("Amgen II").[16]  Lead Plaintiff is entitled to the fraud-on-the-market presumption of reliance because all of the alleged wrongful statements and omissions were public, ¶¶62-81, and Matrixx's shares traded in an efficient market during the Class Period.

The Ninth Circuit approves of the use of the "*Cammer*" factors in determining market efficiency.  *See Binder v. Gillespie,* 184 F.3d 1059, 1064 (9th Cir. 1999) (citing *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989)); *Levine*, 2002 WL 31056919, at *3.  The *Cammer* factors are as follows: (1) whether the stock trades at a high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether securities analysts follow and report on the stock; (4) whether the company is eligible to

---

[15] *See also In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 512 n.2 (9th Cir. 1991) (stating that the fraud-on-the-market doctrine "recognizes that most investors rely on the market to evaluate information for them, rather than on their own independent analysis of a stock's value" and "[a]n investor's reliance on the market, therefore, is equivalent to reliance upon statements made to the market, or the nondisclosure of material information").

[16] While the fraud-on-the-market presumption is rebuttable, it is generally rebuttable at summary judgment or at trial.  *See Amgen II,* 660 F.3d at 1175.  In addition, the materiality of the misrepresentations is also to be addressed at summary judgment or trial.  *Id.* at 1177.

file a registration statement on Form S-3; and (5) facts showing a cause-and-effect relationship between unexpected corporate events or news about the company and immediate responses in its stock price. *Cammer*, 711 F. Supp. at 1286-87.

There is no doubt that the market for Matrixx's common stock was efficient throughout the Class Period. As an initial matter, the fact that Matrixx's common stock traded on an established market such as the NASDAQ Global Select Market — a segment of the NASDAQ Global Market with the highest initial listing standards of any exchange in the world — alone provides substantial support for establishing market efficiency.[17]

Moreover, an analysis of the five *Cammer* factors demonstrates that Matrixx's common stock traded in an information efficient market during the Class Period:

- **High Weekly Trading Volume**: The average weekly trading volume for Matrixx's stock during the Class Period was 3.7%% of the Company's outstanding shares. Nye Decl., ¶15. The 3.7% weekly turnover exceeds the 2.0% weekly turnover that the *Cammer* court explained would justify a strong presumption of an efficient market. *See Cammer*, 711 F. Supp. at 1293 ("Turnover measured by average weekly trading of 2% or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one."); *see also In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 963-64 (C.D. Cal. 2000).

- **Widespread Analyst Coverage**: Matrixx was followed by at least 13 financial analysts during the Class Period. Nye Decl., ¶¶18-20. This analyst coverage further supports the conclusion that there was an efficient market for Matrixx's common stock during the Class Period. *See In re Nature's Sunshine Product's Inc. Sec. Litig.*, 251 F.R.D. 656, 662-63 (D. Utah 2008) (explaining that courts have found that coverage by two analysts publishing reports does not heavily favor a finding of market efficiency; four or more weighs in favor of finding market efficiency).

- **Market Makers and Potential for Arbitrage**: During the Class Period, the number of active market makers trading Matrixx stock ranged from 17

---

[17] *See Levine*, 2002 WL 31056919, at *5 ("[T]he fact that SkyMall stock is traded on the NASDAQ stock market's National Market System also contributes to finding that the market is efficient."); *see also Cammer*, 711 F. Supp. at 1292 ("[T]here should be a presumption . . . that certain markets are developed and efficient for virtually all the securities traded . . . [on] the NASDAQ National Market System.").

to 25, and averaged 21 per month. *See* Nye Decl., ¶22; *see also Levine*, 2002 WL 31056919, at *6 ("The existence of multiple market makers therefore weighs in favor of concluding that the market for SkyMall stock was efficient during the Class Period."). The potential for arbitrage also existed based on the short interest in the stock, the level of institutional ownership, and the bid/ask spreads for Matrixx stock during the Class Period. *See* Nye Decl., ¶¶24-32.

- **S-3 Eligibility**: Matrixx was eligible to file Form S-3 Registration Statements and made numerous such filings prior to the Class Period. *See* Nye Decl., ¶¶33-34. The eligibility to file a Form S-3 with the SEC is a factor that this Court has considered important in determining whether a company's stock trades in an efficient market. *Levine*, 2002 WL 31056919, at *6 ("Whether a company is eligible to file an SEC Form S–3 Registration Statement is an 'extremely important' factor in determining whether a company's stock trades in an efficient market.") (citation omitted).

- **Cause-Effect Relationship**: Zachary Nye conducted an event study that confirmed that Matrixx's stock price promptly responded to new, material company-specific news. *See* Nye Decl., ¶¶35-50. This demonstrable relationship between company-specific news releases and prompt share-price reaction strongly supports the conclusion that Matrixx's stock traded in an efficient market during the Class Period. *Levine*, 2002 WL 31056919, at *8 ("Because establishing causation is the most important factor in making a case for class certification, this analysis weighs heavily in favor of finding that Plaintiff has sufficiently established that SkyMall stock was traded on an efficient market and is therefore entitled to a presumption of reliance under the fraud-on-the-market theory.").

Having satisfied each of the applicable *Cammer* factors, Lead Plaintiff and the Class are entitled to the presumption of reliance under the fraud-on-the-market theory.

## 2.    <u>Superiority Is Established</u>

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts in this circuit and around the country have recognized that the class action device is superior to other available methods for managing litigation such as this action involving a large number of purchasers of securities injured by violations of the securities laws.[18]

---

[18] *See In re DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS 21534, at *29 (S.D. Cal. Nov. 17, 2003) ("[A] class action is clearly the preferred mechanism for adjudicating these [securities fraud] cases."); *see also Cooper*, 254 F.R.D. at 632; *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 120 (S.D.N.Y. 2008) ("In

Each of the factors[19] under Rule 23(b)(3) weighs strongly in favor of class certification of this action.  First, the proposed Class consists of a large number of investors who purchased Matrixx's common stock, many of whose individual damages are small enough to render individual litigation prohibitively expensive, and who would lack a means of redress without the availability of a class action.  Second, Lead Plaintiff is aware of no other actions pending against Matrixx relating to the specific wrongs alleged in the Complaint.  Third, it is desirable to concentrate the litigation in this forum since a substantial part of the alleged misconduct occurred and emanated from this district, and concentrating Class members' claims in a single forum conserves judicial resources.[20]  Fourth, there is no reason to expect any difficulties in the management of this action as a class action.  Plaintiff's counsel and the Court have handled numerous similar actions, and the appropriate procedures and techniques for the management of such actions are well-established.  Accordingly, a class action is the superior method of adjudication.

### D.  PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel."  Lead Plaintiff respectfully requests that the Court appoint Plaintiff's counsel, Saxena White and Faruqi, as Class Counsel.  In appointing class counsel, the court should

---

general, securities suits such as this easily satisfy the superiority requirement of Rule 23.").

[19] In determining whether the superiority requirement is met, Rule 23(b)(3) provides that the Court consider (A) class members' interests in maintaining separate actions, (B) the extent of any other litigation concerning the controversy, (C) the desirability of concentrating the litigation in a particular forum, and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

[20] Moreover, the nationwide geographical dispersion of the Class members, based upon Matrixx's sale of common stock on a national exchange, makes it desirable that litigation of the claims involved here be concentrated in this forum.  *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009) ("[I]t is almost certain that there will be thousands of class members.  Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum.").

consider counsel's work "in identifying or investigating potential claims in the action," "counsel's experience in handling class actions," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Saxena White and Faruqi are well-qualified to prosecute this case on behalf of Plaintiff and the other members of the Class.

The attorneys at Saxena White and Faruqi have extensive experience in securities litigations and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  *See* Co-Lead Counsel and Liaison Counsel Firm Resumes, Dkt. ## 24-5, 24-6, 24-7, 24-8.  They have already undertaken a vigorous prosecution of this action, including conducting an investigation of the claims, filing both the original and the amended complaints, defeating a motion to dismiss, developing a detailed plan for the prosecution of the case, engaging in discovery, engaging an expert to opine on class certification matters, and pursuing class certification.[21]  Accordingly, Saxena White and Faruqi fulfill the requirements of Rule 23(g) and should be appointed Class Counsel.

## IV.   <u>CONCLUSION</u>

As demonstrated above, this action satisfies all the requirements of Rules 23(a) and (b)(3), and Lead Plaintiff's counsel satisfy the requirements of Rule 23(g).  Accordingly, Plaintiff respectfully requests that the Court issue an Order: (1) certifying this action pursuant to Rule 23 as a class action and certifying the Class as defined herein; (2) appointing Lead Plaintiff Axel Alegre de La Soujeole as Class Representative; and (3) approving Class Representative's selection of Saxena White P.A. and Faruqi and Faruqi LLP as Class Counsel.

---

[21] Additionally, Rule 23(g)(1)(B) provides that the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." This Court appointed Saxena White and Faruqi as Co-Lead Counsel.  *See* July 28, 2010 Order (Dkt. #29).

Dated: February 20, 2012

**TIFFANY & BOSCO, P.A.**

By: ___/s/ J. James Christian___

Richard G. Himelrick (#004738)
J. James Christian (#023614)
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Tel.: (602) 255-6000
Fax: (602) 255-0103

*Local Counsel for Lead Plaintiff*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Christopher S. Jones
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: (561) 394-3399
Fax: (561) 394-3082

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Richard W. Gonnello
369 Lexington Avenue, Tenth Floor
New York, NY 10017-6531
Tel: (212) 983-9330
Fax: (212) 983-9331

**FARUQI & FARUQI, LLP**
Vahn Alexander
Christopher B. Hayes
10866 Wilshire Boulevard
Suite 1470
Los Angeles, CA  90024
Tel: (424) 256-2884
Fax: (424) 256-2885

*Co-Lead Counsel for Lead Plaintiff
and Proposed Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 20, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ J. James Christian*
J. James Christian

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION