**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick, Arizona Bar #004738
J. James Christian, Arizona Bar #023614
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Tel: (602) 255-6000
Fax: (602) 255-0103
rgh@tblaw.com; jjc@tblaw.com

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice*)
Joseph E. White, III (*pro hac vice*)
Christopher S. Jones (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: (561) 394-3399
Fax: (561) 394-3082

*Counsel for Lead Plaintiff Axel Alegre de La Soujeole
and Proposed Counsel for the Class*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID SHAPIRO, Individually and On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MATRIXX INITIATIVES, INC., WILLIAM J. HEMELT, SAMUEL C. COWLEY, TIMOTHY L. CLAROT, and CARL J. JOHNSON,<br><br>Defendants. | No. CV-09-1479-PHX-ROS<br><br>**LEAD PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ....................................................................................................... 1

     A.   Lead Plaintiff's Claims Are Typical Of Those of The Class .......................... 1

     B.   Lead Plaintiff Is An Adequate Class Representative ....................................... 5

          1.   Lead Plaintiff Is Well-Versed In The Case ............................................ 5

          2.   Lead Plaintiff Has Adequately Supervised Counsel ............................. 8

III.  CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Andrade v. Am. Apparel, Inc.*,
  No. 10-06352 MMM, 2011 U.S. Dist. LEXIS 79795
  (N.D. Cal. Mar. 15, 2011) .................................................................................. 9

*Basic v. Levinson*,
  485 U.S. 224 (1988) ........................................................................................... 2

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) .............................................................................. 5

*Blank v. Jacobs*,
  No. 03-CV-2111(JS)(MLO), 2009 U.S. Dist. LEXIS 91605
  (E.D.N.Y. Sept. 30, 2009) .................................................................................. 4

*Brink v. First Credit Res.*,
  185 F.R.D. 567 (D. Ariz. 1999) ......................................................................... 5

*In re Connectics Corp. Sec. Litig.*,
  257 F.R.D. 572 (N.D. Cal. 2009) ....................................................................... 4

*Conn. Ret. Plans & Trust Funds v. Amgen, Inc.*,
  660 F.3d 1170 (9th Cir. 2011) .................................................................... 1, 2, 3

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
  270 F.R.D. 521 (N.D. Cal. 2010) .................................................................. 7, 9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  131 S. Ct. 2179 (2011) ....................................................................................... 1

*Facciola v. Greenberg Traurig LLP*,
  No. CV-10-1025-PHX-FJM, 2012 U.S. Dist. LEXIS 37133
  (D. Ariz. Mar. 20, 2012) .................................................................................4-5

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990) .............................................................................. 4

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................... 4

*Herkert v. MRC Receivables Corp.*,
  254 F.R.D. 344 (N.D. Ill. 2008) ......................................................................... 9

*Hoexter v. Simmons*,
  140 F.R.D. 416 (D. Ariz. 1991) .................................................................................... 4

*Kelley v. Mid-America Racing Stables, Inc.*,
  139 F.R.D. 405 (W.D. Okla. 1990) .............................................................................. 10

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  756 F. Supp. 2d 928 (E.D. Ill. 2010) ............................................................................ 3

*McGuire v. Dendreon Corp.*,
  267 F.R.D. 690 (W.D. Wash. 2010) ............................................................................. 3

*In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*,
  251 F.R.D. 656 (D. Utah 2008) .................................................................................... 5

*In re Providian Fin. Corp. Sec. Litig.*,
  No. C 01-03952, 2004 U.S. Dist. LEXIS 31107
  (N.D. Cal. Jan. 15, 2004) .............................................................................................. 4

*In re Res. Am. Secs. Litig.*,
  202 F.R.D. 177 (E.D. Pa. 2006) .................................................................................... 8

*Rocco v. Nam Tai Electronics, Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) .................................................................................. 4

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ...................................................................................... 5

*Seidman v. Am. Mobile Sys. Inc.*,
  157 F.R.D. 354 (E.D. Pa. 1994) ................................................................................ 3-4

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................................ 5

*Stuart v. Radioshack Corp.*,
  No. C-07-4499 EMC, 2009 U.S. Dist. LEXIS 12337
  (N.D. Cal. Feb. 5, 2009) ........................................................................................ 7-8, 9

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. CV-07-02204-PHX-FJM, 2009 U.S. Dist. LEXIS 61145
  (D. Ariz. July 17, 2009) ................................................................................................ 5

*In re Vivendi Universal, S.A. Sec. Litig.*,
  756 F. Supp. 2d 512 (S.D.N.Y. 2011) ......................................................................... 3

iii

*West v. Prudential Secs., Inc.*,
    282 F.3d 935 (7th Cir. 2002) ....................................................................................... 4

*Willing v. Alexy*,
    155 F.R.D. 654 (N.D. Cal. 1994)................................................................................. 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) and (b)(3)................................................................................ 1, 7, 10

## I. INTRODUCTION

Lead Plaintiff Axel Alegre de La Soujeole ("Lead Plaintiff" or "Mr. de La Soujeole") has demonstrated all of the requirements necessary to grant his Motion for Class Certification (the "Motion") under Fed. R. Civ. P. 23(a) and (b)(3).[1]  Indeed, Defendants concede that Lead Plaintiff has established the class-wide requirements of numerosity, commonality, superiority, and predominance; and Defendants only challenge Mr. de La Soujeole's typicality and adequacy to represent the Class.[2] As explained below, Defendants' arguments concerning Lead Plaintiff have no merit and fail to raise any issues of fact or law that would prevent certification of the Class.  Accordingly, Lead Plaintiff respectfully requests that the Court grant his Motion.

## II. ARGUMENT

### A. LEAD PLAINTIFF'S CLAIMS ARE TYPICAL OF THOSE OF THE CLASS

As an initial matter, Defendants do not dispute that the market for Matrixx securities was efficient or that the alleged misrepresentations were public.  In an efficient market, "the market price of [Matrixx securities] reflect[s] all publicly available information, and, hence, any material misrepresentations." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2181-82 (2011) (quotation and citation omitted). Therefore, Lead Plaintiff and the Class are entitled to invoke the fraud-on-the-market presumption to establish their reliance on Defendants' misrepresentations.  *See Conn. Ret. Plans & Trust Funds v. Amgen, Inc.*, 660 F.3d 1170, 1173 (9th Cir. 2011).  Thus, "[a]nyone who buys stock at the ***prevailing market price*** is presumed to have relied ***on that price***—and by extension, each piece of publically available information it reflects—

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as those found in Lead Plaintiff's Opening Brief, ECF No. 65.

[2] *See* Defendants' Opposition to Lead Plaintiff's Motion For Class Certification, ("Defendants' Opp. Br.), ECF No. 72, at 7-14.

1 as a measure of the stock's value, even if the investor never saw that information." *Id.* at
2 1173 (citing *Basic v. Levinson*, 485 U.S. 224, 247 (1988)) (emphasis added).
3        Defendants argue that Mr. de La Soujeole did not rely on the integrity of the
4 market price when he purchased Matrixx stock and therefore is atypical of other Class
5 members. *See* Defendants' Opp. Br., at 8-11 (arguing that Lead Plaintiff admitted he
6 "did not purchase his shares in reliance on the market price of Matrixx's securities"
7 because he had no prior knowledge of previously disclosed product liability litigation and
8 consumer complaints). This argument is misguided.
9        As alleged in the Complaint, see ¶¶ 3-6, 88-89, and recognized by the Court in its
10 Order denying Defendants' motion to dismiss the Complaint (ECF No. 41, at 4-5):

> [Lead Plaintiff] allege[s] Defendants engaged in a fraudulent scheme to inflate Matrixx's stock price by misrepresenting Matrixx had complied with FDA regulations and the Act's SAE reporting requirement, and by concealing the number of anosmia AERs Matrixx received. . . . Specifically, Defendants failed to tell the investing public that: (a) they had received hundreds of AERs from consumers complaining of anosmia; (b) they knew of and reviewed these AERs on a regular basis; and (c) they failed to reveal the existence of the AERs to the FDA as required by federal law.

16 Thus, the Class's claims are not about the product liability litigation and consumer
17 complaints that the Defendants disclosed prior to the end of the Class Period, but rather
18 concern the consumer complaints that the Defendants did *not* disclose to shareholders
19 and the FDA.
20        Under *Basic*, the presumption of reliance can only be rebutted by severing "the
21 link between the ***alleged misrepresentation*** and either the price received (or paid) by the
22 plaintiff, or his decision to trade at a fair market price." 485 U.S. at 248 (emphasis
23 added). The Supreme Court has "noted that it is hard to imagine that there ever is a buyer
24 or seller who does not rely on market integrity. Who would knowingly roll the dice in a
25 crooked crap game?" *Id.* at 246-47 (internal quotations and citations omitted).
26        Here, Defendants claim that Mr. de La Soujeole "admitted non reliance" on the
27 market price because he testified that he would not have purchased Matrixx stock if he
28

1  had known about the consumer complaints and litigation that the Defendants had
2  disclosed. *See* Defendants' Opp. Br., at 10. However, Mr. de La Soujeole's testimony
3  merely highlights the fact that he did not know all available information on Matrixx's
4  Zicam products and instead relied on the market to price the Company's securities when
5  he decided to invest. *See* Deposition Transcript of Lead Plaintiff Axel Alegre de La
6  Soujeole, attached hereto as Exhibit A ("de La Soujeole Depo."), at 72:12-73:22 (stating
7  that, among other factors, Lead Plaintiff relied on the "price of the share" prior to making
8  his investment in Matrixx).

9  Further, Mr. de La Soujeole's testimony in no way rebuts his ability to invoke the
10 fraud on the market presumption, as he did not testify that he would have bought Matrixx
11 stock had he known of Defendants' **fraud**. *See Amgen*, 660 F.3d at 1173 (stating that
12 defendant can rebut the fraud-on-the-market presumption by showing that "a particular
13 plaintiff ***would have bought*** the stock without relying on the integrity of the market
14 price") (emphasis added); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756
15 F. Supp. 2d 928, 933-34 (E.D. Ill. 2010) (after a jury verdict for plaintiff, the court only
16 allowed the fraud-on-the-market presumption to be rebutted when a class member
17 affirmatively answered yes on his or her claim form to the following question: "If you
18 had known at the time of your purchase of Household stock that defendants' false and
19 misleading statements had the effect of inflating the price of Household stock and thereby
20 caused you to pay more for Household stock than you should have paid, would you still
21 have purchased the stock at the inflated price that you paid?"); *In re Vivendi Universal,*
22 *S.A. Sec. Litig.*, 756 F. Supp. 2d 512, 586 (S.D.N.Y. 2011) (after a jury verdict for
23 plaintiff, the court allowed Vivendi "to prove that any individual claimants would have
24 purchased Vivendi shares even if they had known of the fraud").[3]

---

[3] *See also McGuire v. Dendreon Corp.*, 267 F.R.D. 690, 695 (W.D. Wash. 2010) (plaintiff's belief that the market is "rigged" did not demonstrate "non-reliance on the integrity of the market"); *Seidman v. Am. Mobile Sys. Inc.*, 157 F.R.D. 354, 360-62 (E.D.

3
LEAD PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION

1 Tellingly, Defendants' legal authority only supports the proposition that a proposed class representative may be subject to a unique defense when the representative purchased stock ***after partial disclosure of the fraud***.  See *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990) (finding the lead plaintiff atypical because it was subject to a unique defense when it made several purchases of securities ***after*** partial disclosure of the fraud); *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (same); *Blank v. Jacobs*, No. 03-CV-2111(JS)(MLO), 2009 U.S. Dist. LEXIS 91605, at *14-20 (E.D.N.Y. Sept. 30, 2009) (same);[4] *cf. West v. Prudential Secs., Inc.*, 282 F.3d 935 (7th Cir. 2002) (refusing to apply the fraud-on-the-market to non-public statements, a point not in contention here); *Hoexter v. Simmons*, 140 F.R.D. 416, 422-23 (D. Ariz. 1991) (denying class certification to "professional plaintiffs," a point also not in contention here).  By contrast, Mr. de La Soujeole made no purchases of stock after the Company's fraud concerning its compliance with FDA regulations became apparent to the marketplace on June 16, 2009, the date the Company announced that it had received the FDA Warning Letter.  *See* de La Soujeole Depo., at 90:6-90:11.

Therefore, Mr. de La Soujeole is "typical" of other class members because his claims are "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Facciola v. Greenberg Traurig*

---

Pa. 1994) ("contrarian" investor relied on integrity of the market when he purchased shares without knowledge of defendant's dishonesty).

[4] Moreover, many courts reject the notion that a class representative that purchased stock after a defendant's partial disclosure is subject to a unique defense and therefore is rendered atypical. *See, e.g.*, *In re Connectics Corp. Sec. Litig.*, 257 F.R.D. 572, 576 (N.D. Cal. 2009) (rejecting in the class certification context the argument that "a plaintiff is atypical if it buys stock after the disclosure of an alleged fraud"); *In re Providian Fin. Corp. Sec. Litig.*, No. C 01-03952, 2004 U.S. Dist. LEXIS 31107, at *13-16 (N.D. Cal. Jan. 15, 2004) (same).

1  *LLP*, No. CV-10-1025-PHX-FJM, 2012 U.S. Dist. LEXIS 37133, at *14-15 (D. Ariz.
2  Mar. 20, 2012) (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)).

### B.  LEAD PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE

To determine whether a proposed class representative will fairly and adequately protect the interests of the class, the Ninth Circuit asks two questions: "(1) Do the representative plaintiffs and their counsel have conflicts of interest with other class members; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citation omitted). Here, Mr. de La Soujeole easily clears both hurdles.

#### 1.  Lead Plaintiff Is Well-Versed In The Case

Contrary to Defendants' unsupported suggestion that the proposed lead plaintiff has to be "highly knowledgeable" regarding the claims at issue, Defendants' Opp. Br., at 11, "[c]ourts have recognized that in a complex lawsuit . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 U.S. Dist. LEXIS 61145, at *16 (D. Ariz. July 17, 2009) (quoting *In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*, 251 F.R.D. 656, 659 (D. Utah 2008)); *see also Brink v. First Credit Res.*, 185 F.R.D. 567, 571 (D. Ariz. 1999) ("A plaintiff need possess no more than marginal familiarity with the facts of his case, and need not fully understand the legal theories, particularly when he or she is represented by competent counsel.") (citation omitted). Defendants' citation to *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001) also confirms that "the class representative [is required] to possess a ***sufficient*** level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." (emphasis added).

Here, Mr. de La Soujeole has demonstrated a profound familiarity with the basis of the suit and is therefore an adequate class representative. *See, e.g.*, de La Soujeole Depo., at 95:6-95:22 (testifying that the lawsuit involved "zinc-based" Zicam products

"in edible form or swabs to put in the nose"). In fact, when asked at his deposition to describe the general basis of the alleged misrepresentation in the action, Mr. de La Soujeole accurately testified:

> A:   I think there was – there were hundreds of reports and complaints from consumers that they had lost a sense of smell. . . .
>
> And I think the loss of the sense of small was recognized and documented as a very significant adverse event. And that the company failed to . . . acknowledge these are significant – significant adverse events and failed to . . . acknowledge them.
>
> I think there were some declarations made at some point that the claims by consumers were inaccurate, unscientifically based. I think all that amounts to very substantial misrepresentation of facts. . . .
>
> Yes, another statement I think that was made at least once, maybe more than once, is that the company was in full compliance with all the requirements of FDA, of Federal Drug . . . Administration . . . when, actually, they did not forward to the FDA . . . the reports that they were, by law, had the duty to forward . . . and therefore were not in compliance completely with all the requirements.

de La Soujeole Depo., at 113:17-114:18.

> Because if Matrixx tells the public, we're in full compliance with the FDA . . . and the FDA says you cannot sell because you are not in compliance, you don't have authorizations, well, they are contradicting statements. And I don't think the FDA was lying about the situation, and therefore the contrary information that was given to the public is information that was false.

de La Soujeole Depo., at 167:8-167-17.

Likewise, Mr. de La Soujeole adequately explained his general understanding of the Dietary Supplement and Nonprescription Drug Consumer Protection Act (the "Act"), what a serious adverse event is, and the loss suffered by all class members as a result of Defendants' course of conduct and the previously-undisclosed issues identified in the June 16, 2009 FDA Warning Letter:

> Q:   What is you understanding of the [Dietary Supplement and Nonprescription Drug Consumer Protection] Act?
>
> A:   Up until the Act, food supplements and over-the-counter product[s] were not subject to a duty of reporting to the FDA because they were not medication. But what the Act changed in December 22nd, '06, and it came into effect 12 months later in '07, what the Act changed is that after the passing of the Act, also the food supplement and – and the over-the-counter drugs were subject to the same requirement of filing as the real medication, if you will, prescription medication.

6

LEAD PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION

de La Soujeole Depo., at 139:20-140:3.

>  Q: What is your understanding of what a serious adverse event is?
>
>  \* \* \* \* \* \*
>
>  A: Okay. A serious . . . adverse event is something seriously or permanently . . . affects your health. Affect the use of a sense, you know, one of the five senses. Either the disappearance of that sense, either for a prolonged period of time or forever. And in some cases, in the case of the sense of smell, people may lose their job if they cannot smell.
>
>  \* \* \* \* \* \*
>
>  Q: And what is your understanding of whether anosmia is a serious adverse event or not?
>
>  A: I understand that if I lost my sense of smell, my life would not be the same, and that would be very serious.

de La Soujeole Depo., at 142:2-143:25.

>  A: I do believe that this looks like things that appear in many, many record[s] in many companies. I think the – the order of the FDA was ***totally different event, different decision, different piece of information which causes – caused, you know, the – share[s] to go down***.

de La Soujeole Depo., at 138:13-138:20 (emphasis added).

Mr. de La Soujeole's extensive knowledge of the case far exceeds the minimal threshold required to demonstrate his adequacy to serve as a class representative under Rule 23. Nonetheless, Defendants argue that Mr. de La Soujeole is inadequate to serve as a class representative by attacking granular aspects of his testimony. *See* Defendants' Opp. Br., at 12. However, to insist that a class representative needs to remember or understand all the factual and legal minutia of the case goes substantially beyond what is expected of a class representative and would essentially turn their depositions into memory tests. *See, e.g.*, *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 534 (N.D. Cal. 2010) (concluding that lead plaintiffs need only be "familiar with the basis for the suit" to be adequate to represent the class); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 U.S. Dist. LEXIS 12337, at *33-34 (N.D. Cal. Feb. 5, 2009) ("[C]ourts have found that a plaintiff may adequately represent the

1 class if he or she has a 'basic understanding about the nature of the suit,' . . . or a
2 generalized understanding of the allegations in the case.") (citation omitted); *see also In*
3 *re Res. Am. Secs. Litig.*, 202 F.R.D. 177, 188 (E.D. Pa. 2006) (concluding that even
4 though lead plaintiff was not aware of the underlying facts of case, he was adequate to
5 represent the class because he "had a basic understanding of the allegations made in the
6 case, and what law is alleged to have been violated, and that he would be willing to
7 contest an action by his attorneys with which he did not agree").

8 Therefore, Defendants' assertion that the Lead Plaintiff is inadequate due to a lack
9 of knowledge about the case is baseless and should be rejected.

### 2. Lead Plaintiff Has Adequately Supervised Counsel

11 Defendants fail to point to anything in Mr. de La Soujeole's testimony that
12 indicates he has failed to serve the necessary role of checking the "unfettered discretion"
13 of counsel. Defendants' Opp. Br., at 13. Here, Mr. de La Soujeole has demonstrated his
14 commitment to vigorously prosecute the action and represent the class by reviewing the
15 amended complaint, personally answering interrogatories, and appearing for the
16 deposition. de La Soujeole Depo., at 24:11-24:14 ("Q: When you reviewed [the
17 interrogatories], did you understand these discovery, . . . questions and answers? A: Yes.
18 A lot of these answers I generated myself."); 107:6-107:9 ("Every time when counsel
19 filed some documents, I . . . read them, and I reviewed them with them ahead of time
20 when my participation was involved.").

21 Mr. de La Soujeole also understands his fiduciary duty as a class representative.
22 de La Soujeole Depo., at 184:2-184:5 ("I accept to serve as a class representative. I
23 understand my fiduciary duties in that capacity, and I understand that I'm not entitled to
24 any special benefits or special compensation or anything like that."); 186:15-186:18 ("I
25 need to keep myself informed, involved; that I have to hire counsel, which is done; and to
26 be available to take deposition[s], which I'm doing today; and to appear at trial, should it
27 be requested."); 187:7-187:10 ("Q: And do you believe that you can adequately protect

the interests of the proposed class members? A: With the competent help and guidance of . . . counsel, yes.").

Additionally, contrary to Defendants' suggestion, a class representative's purported "failure to second guess his lawyers' legal conclusions . . . is not sufficient to call his adequacy into question." *Andrade v. Am. Apparel, Inc.*, No. 10-06352 MMM (PJWx), 2011 U.S. Dist. LEXIS 79795, at *47-48 (N.D. Cal. Mar. 15, 2011); *see also Conseco*, 270 F.R.D at 531 ("Plaintiffs are laypersons and cannot be expected to define the scope of the class or name all of the causes of action in more precise terms. The fact that they are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy."); *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008) ("It is permissible for class counsel to be the driving force behind the more complicated legal theories, as long as the named plaintiff has some general knowledge and understanding of the issues, and a willingness to participate in the suit.").

Defendants' cite to no pertinent authority to support their contention that Mr. de La Soujeole's deposition testimony supports the inference that he would blindly rely on counsel. In *Stuart v. Radioshack Corp.*, for example, the court did not find the proposed class representative inadequate despite expressing "concern" about the plaintiff's "lack of familiarity with the specific policies at issue" because the lead plaintiff "demonstrated a basic understanding of the case." *Stuart*, 2009 U.S. Dist. LEXIS 12337, at *31. In *Willing v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994), the uncontroverted record established that the proposed lead plaintiff "was unaware that his lawyers had filed an amended complaint . . . and expressed an intention not to supervise the amount of time spent by his attorneys in prosecuting the case." Here, Mr. de La Soujeole testified that he reviews case documents before they are filed, including the amended complaint, and he confirmed that he actively monitors counsel. de La Soujeole Depo., 107:6-107:9; 185:6-

9

1  185:7 ("I think we make joint decision[s]. I take into account the advice of . . . the
2  lawyers.").

3        Finally, in *Kelley v. Mid-America Racing Stables, Inc.*, 139 F.R.D. 405 (W.D.
4  Okla. 1990), the proposed lead plaintiff testified that he could not even identify how he
5  was injured, other than what was supplied to him by counsel. Again, here, Mr. de La
6  Soujeole has identified how he and the class have been harmed. de La Soujeole Depo., at
7  113:13-114:18; 138:14-138:20; 186:21-186:25 (identifying class members to be "[a]ll
8  individuals or entities who purchased shares during the class period and were damaged
9  by the event of June 16"). In stark contrast to the minimalist examples cited in
10 Defendants' brief, Mr. de La Soujeole has established an impressive track record of
11 actively monitoring his counsel and the litigation, thus demonstrating his commitment to
12 the vigorous prosecution of this action.

13       Therefore, Mr. de La Soujeole is adequate under Rule 23(a) and (b)(3) to represent
14 the Class.

15 **III.   CONCLUSION**

16       Since Lead Plaintiff has demonstrated all elements of Rule 23(a) and (b)(3), his
17 Motion for Class Certification should be granted and Lead Plaintiff respectfully requests
18 that the Court issue an order: (1) certifying this action pursuant to Rule 23 as a class
19 action and certifying the Class; (2) appointing Lead Plaintiff Axel Alegre de La Soujeole
20 as Class Representative; and (3) approving Class Representative's selection of Saxena
21 White P.A. and Faruqi & Faruqi, LLP as Class Counsel.

22 Dated: June 20, 2012                          **TIFFANY & BOSCO, P.A.**

23                                             By:   */s/ J. James Christian*
24                                              Richard G. Himelrick (#004738)
                                             J. James Christian (#023614)
25                                              Third Floor Camelback Esplanade II
                                             2525 East Camelback Road
26                                              Phoenix, Arizona 85016-4237
                                             Tel.: (602) 255-6000
27                                              Fax: (602) 255-0103

28

*Local Counsel for Lead Plaintiff Axel Alegre de La Soujeole and Proposed Counsel for the Class*

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice*)
Joseph E. White, III (*pro hac vice*)
Christopher S. Jones (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: (561) 394-3399
Fax: (561) 394-3082

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Richard W. Gonnello (*pro hac vice*)
369 Lexington Avenue, Tenth Floor
New York, NY 10017-6531
Tel: (212) 983-9330
Fax: (212) 983-9331

*Co-Lead Counsel for Lead Plaintiff Axel Alegre de La Soujeole and Proposed Counsel for the Class*

11

LEAD PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 20, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ J. James Christian*
J. James Christian
